Mr. Torres-Refulio is a Peruvian national who has been in this country since 1989 and for whom a permanent residency visa is immediately available. However, because of ineffective assistance of counsel that he received in his initial hearings before the Immigration Judge and the Board of Immigration Appeals, and because of procedural rules following the adverse rulings of the Board of Immigration Appeals as a result of his counsel's ineffective assistance, Mr. Torres-Refulio has been unable to claim that visa and to have his status adjusted to that of alien lawfully present so that he can claim his visa. Let me ask about your ineffective assistance counsel claim. Did you raise this before the BIA? This was not raised before the BIA, Your Honor. Then why should we consider it here? I believe it should be considered here because, first of all, as this Court has previously ruled, a motion to reopen for ineffective assistance of counsel is a discretionary motion. It's not a mandatory one and, therefore, the rule of administrative exhaustion of remedies does not apply to a due process challenge such as ineffective assistance of counsel. Secondly, Mr. Torres-Refulio, as a non-attorney, had no basis of knowing of his prior attorney's ineffective assistance of counsel, and he did not learn of it until we at O'Malgany informed him of it when we began looking at the merits of his appeal last summer. So part of that time, he had no basis of knowing that he had received ineffective assistance, that Mr. Nix had not made a plausible argument that would have been a grounds for re-appeal. But he waited seven years to come back in, and isn't he supposed to show some due diligence here? He is, Your Honor, and if you look at the lengthy record for Mr. Torres, he has been acting diligently as the best that he was able to, given that he was a non-attorney and given the resources he had. He initially retained Mr. Nix back in 1995. Who did he retain in 1995? The attorney's name was Thomas Nix. Oh, Nix, yeah. Nix, M-I-X, Your Honor. Nix, Tom Nix. Correct. He retained him in 1995 in his hearing before the immigration judge. During that hearing, Mr. Nix informed him that he thought Mr. Torres would have a potential asylum claim, and that's the argument they pursued at that hearing, notwithstanding the fact that a family visa petition had been filed by Mr. Torres' brother several years before, and Mr. Torres was thus eligible to have his status adjusted back in 1995. Mr. Nix never informed him of the ability to have his status adjusted and didn't make that argument to the immigration judge. After the immigration judge denied the asylum petition and granted Mr. Torres a voluntary departure, an appeal was filed with the Board of Immigration Appeals. During that appellate process, Mr. Nix withdrew as Mr. Torres' counsel because he wasn't being paid, and so for several months, Mr. Torres was unrepresented before the Board of Immigration Appeals. The Board denied his appeal, which again was based on the asylum petition, and again, Mr. Nix never raised the issue of the pending family visa petition and the fact that adjustment of status was available to Mr. Torres. A motion to reopen was filed, and in that motion to reopen, Mr. Nix pursued a theory of suspension of deportation based on the fact that Mr. Torres had been in the country for seven years. That argument, however, was not successful because the President had signed the IIRIRA into law on September 30, 1996, which changed the requirement of continuous presence to be seven years before a deportation proceeding was begun, which was not the case with Mr. Torres. The motion to reopen in front of the Board of Immigration Appeals took until 1999 to resolve. At that time, Mr. Nix informed Mr. Torres that his motion to reopen had been denied, never again mentioning that he had this adjustment of status option available, and then informed that he had no valid basis for appeal and would not represent him on appeal. Notwithstanding that, Mr. Torres filed a pro se appeal back in 1999. That pro se appeal was denied in 2001. Mr. Torres immediately, not aware of the legal issues surrounding his case but aware of the facts, filed a motion to reopen with the Board of Immigration Appeals, seeking relief based on changing conditions in Peru and trying to renew his asylum claim. That was denied. Mr. Torres then filed a motion to reconsider, which was denied. Again, not aware of the legal issues surrounding his appeal, Mr. Torres was unaware of what the next action would take and was unaware that you don't have to raise IAC before the Board. You can wait 7 years, 10 years, just because you don't know. You can wait as long as you want. Any case say that? There's no case that says that you can wait forever to raise the claim. The issue is not one of time. It's the issue of when did you become aware of the ineffective assistance of counsel. The issue is why was it not raised before the BIA? I'll get to that, Your Honor. Well, you're in 6 minutes into your 10, so getting to it should come pretty quick. I appreciate it, Your Honor. In terms of the case, let me find that for you, Your Honor. The one case that was recently decided last year, the Garamani v. Gonzalez case, 498 F. 3rd, 993, talked about the diligence with respect to raising ineffective assistance of counsel claim. And that case distinguished an earlier case of the Ninth Circuit, the St. Louis v. Gonzalez case, by pointing out that Mr. Garamani was always seeking relief. He was never trying, he never was ignoring the facts. He was never aware of his ineffective assistance of counsel claim and not doing anything about it. Is that case... Are you talking about tolling now? No, I'm talking about his diligence in trying to raise the... I'm not talking about diligence. I'm talking about why it wasn't raised in front of the BIA. He was not aware of it, Your Honor. Well, now he's aware of it. Why isn't it raised? Well, now to raise it in front of the BIA would be a futile proposition because... Why would it be futile? He's already had three motions to reopen denied on procedural grounds. And? And what? If he were to file a fourth motion to reopen, it would be denied again on procedural grounds. How do we know that? Since we know that the BIA has been told by this Court that you can raise IAC and you can go to the Board and say, you know, Board, there's IAC and I'm entitled to equitable tolling and therefore I want to reopen. And if the Board says, no, I'm sorry, they're procedural bars, then you can appeal to our Court and say, gosh, we really did show grounds for equitable tolling and IAC. Okay. So my question remains, why do we have jurisdiction to review this when it's never been raised in front of the Board? I will find a case that answers that question for you, Your Honor. We decided in our opening papers that there is a case where it was, and maybe it is Granados, and I apologize if I'm mistaken, that the issue was why wasn't, the same question that you're asking me was raised, which is why wasn't this raised in front of the BIA. Let me see if that is Granados. Okay. It's all right. I don't want to waste your time looking for a case. I think it is that case. If you need a few extra minutes, I'll get it. I appreciate that, Your Honor. I have the case here, so let me confirm if that is the case. There the issue in Granados. I'm not certain if that actually was Granados, but it might be. And I will reserve a couple minutes for rebuttal so I can answer that question for you after the government speaks. The issue, though, is that Mr. Torres wasn't aware of it, and this Circuit has held that in a situation where previous motions to reopen have been died on procedural grounds, this Court can take jurisdiction over an ineffective assistance of counsel claim without it first having been presented to the Board of Immigration Appeals. And if you look at the third motion to reopen... Well, he had, his first lawyer was Tom Nix. Correct. And Nix never raised the issue for the IJ or the Board that there was a visa waiting for him, an I-110. I-130, I believe. I-130. Okay, excuse me. So he never raised that. And had he raised it, the policy of the Board then would have been to hold the matter off and wait until that visa was ready to be issued, because there was a time lag, and he would have been home free. I don't know him personally. He was a great cowboy when I was growing up. He was like the Lone Ranger. He was before the Lone Ranger. And does anybody know Tom Nix out here? I do. We know Tom Nix. We used to watch him every Saturday. And the horse even knew how to speak. So the first attorney, I think, to me it was obvious that he was just ineffective. He didn't know what he was doing. Now, I don't recall whether Mr. Nix had a problem with our court in the past or not. Looking for my notes, I couldn't find anything on it. But then he got another lawyer. No, actually, Mr. Nix was his only attorney. Okay, so you can't expect him to bring up the ineffective assistance of counsel claim. And then Nix was the one that told him to file the asylum claim. Chances of getting political asylum under these facts are just non-existent. And then he just gave up on him. Isn't that what happened? That's fairly accurate, Your Honor. Then he's just floating around over there trying to figure out what to do. And so he did make these attempts to reopen his matter. And as I recall, the papers that he filed were correct me if I'm wrong, were not filed by a layperson, but filed by someone who had some knowledge of the law. I believe he filed his own papers for the second motion to reopen and the third motion to reopen. But not the first one. The first one was filed by Mr. Nix. He was represented by Mr. Nix for his IJ hearing, for his board of immigration appeal, and for his motion to reopen in front of the board. Once that first motion to reopen was denied, which it should not have been but for Mr. Nix failing to raise the argument of adjustment of status quo. The motion to reopen never would have been decided. Once that was decided, though, Mr. Nix said you have no basis for appeal. I won't represent you. Mr. Torres then filed his own appeal pro se with this court. That was dismissed in 2001. Mr. Torres then filed his own motion to reopen, which was denied. He then filed a motion to reconsider, which was denied. And then as soon as his visa had been granted in 2003, he immediately filed a motion to reopen with the board of immigration appeals to seek adjustment of status based on the immediately available visa that was waiting for him. That motion was similarly denied on procedural grounds. And that's why we feel that if you were to file a fourth motion to reopen to raise the ineffective assistance of counsel argument, we'd run into the same procedural bars of numerosity and timeliness which were before Your Honor's on right now. And I know I have gone over time, so I will sit down. I will find a case for you, Your Honor. That's the question you asked of me. May it please the court, my name is Joanne Johnson, and I represent the United States in the case before the court today. The board properly exercised its discretion in denying petitioner's motion to reopen. Specifically, the board applied the statute and denied the motion because it was numerically and time barred. Therefore, the board's exercise of its discretion in applying the statute cannot be an abuse of discretion. Could I ask you to distinguish this case from Gray v. Gonzalez, where we held tolling applied even though the ineffective assistance of counsel claim was raised for the first time on appeal? In the Granada's case? I'm sorry. Your Honor, this case is distinguishable. Was it raised for the first time on appeal? This case, the ineffective assistance of counsel claim was raised for the first time on appeal. It was not exhausted before the board. In the Rae case? In this first motion to reopen for the board, Rae claimed his first attorney was responsible for failing to file the brief on appeal. Yes. I was referring to the present case. You asked about Rae. Can you distinguish Rae? It looks like in Rae they did file it with the board. Yes, Your Honor. It wasn't raised for the first time on appeal, correct? Right, it wasn't. I was referring, I'm sorry, to my case. Sorry for that confusion. In the Rae case, yes, it was exhausted. It wasn't exhausted, Your Honor, but the Granada's case references the Rae case. In order to raise an ineffective assistance of counsel claim before the court without raising it before the board, you have to show a fundamental deprivation of due process. In my case, the current case, there has not been that showing, which would warrant this court to have jurisdiction and not find that the alien had failed to exhaust. So the reasons being are as follows. Well, let me ask you this. Wasn't prejudice presumed in Rae v. Gonzalez, where the petitioner's attorneys failed to file a timely motion to reopen or reconsider? And here, Mix did file the motion timely. But it was sort of a worthless motion because he argued that Torres intended to file for suspension of deportation, even though he didn't meet the continuous presence requirement. And the motion made no mention of the pending visa application. And he'd been – wouldn't Torres-Refugio have been better off if that motion had never been filed? In the present case, the alien – no, Your Honor, in this regard. If he had filed a motion to reopen regarding the visa petition 30 days after the board's final decision, 90 days after the board's final decision, within the time limit, he would not have been prima facie eligible for adjustment of status. And therefore, that motion to reopen – Well, what about the fact that he had pending visa application? He had a pending visa application. Was that brought to the attention of the board? No, Your Honor. No, Your Honor. No, Your Honor. No, Your Honor. What was the policy of the BIA at the time that Torres-Refugio went before them, where you had an approved visa petition? Wouldn't they just hold the matter in abeyance and wait for that visa petition to be approved? The visa had to be immediately available, Your Honor. That's by statute. What was the policy of the board at that time? I'm looking at the Matter of Garcia case, which Petitioner's counsel cited in his brief from 1978. And my understanding of this case – What case is that you're looking at? It's 16 INN – Are you looking at – what's the name of the case? Matter of Garcia. But that was a marriage case, wasn't it? This is the case that Petitioner's counsel has cited in support of the notion that somehow a current priority date wouldn't be due, and simply having an approved visa would suffice, and that somehow the case would be held open if he had filed a motion to reopen. But let me ask about that. The government – well, it seems here that when Torres filed his initial motion to reopen in 1997, Garcia had been advocated in the Dealman case. Is that correct? Yes, Your Honor. So in the Dealman case, which is a marriage-related case, but applies in this context, the court was clear to say that simply a procedural bar – the language is the court was not swayed by the argument that the finding of ineligibility was based upon a procedural requirement outside the control of the alien. In other words, in this case, the motion to reopen wouldn't be held in abeyance essentially in infinity until the priority date would become due because of that procedural requirement. Rather, the alien has to establish that the visa was immediately available. And the visa was only immediately available once the priority date became current. The priority date became current in 2003. Therefore, no matter how effective the counsel would have been, there would have been no prima facie eligibility for adjustment of status 30 days or 90 days after the board's decision on the merits. It wasn't until seven years later that petitioner became – his priority date became current, and he became – had a visa up and running. He was immediately available to comply with the statute, to meet prima facie eligibility, and to therefore be able to adjust status. But of course, at that time, he was numerically barred, and he was time barred. And therefore, the board properly exercised its discretion in denying his motion to reopen. Now, when he first appeared before the IJ, he brought up, as I stated earlier, about his priority date not being due. And the IJ told him, you know, I'm sorry, you'll have to go back to Peru and wait until the visa becomes current. And the IJ even said, quote, he would be generous in giving him a six-month voluntary departure period, which the IJ did grant, which the petitioner didn't follow. He also failed to voluntarily depart. Now, let me ask you this question. What does the matter of Garcia hold? In the matter of Garcia, Your Honor, it specifically says, an immigration judge may, in his discretion, grant a motion to reopen or a request for continuance of a deportation hearing pending the final adjudication of a visa petition filed simultaneously with an adjustment application, where a prima facie eligibility is required. Does Garcia hold that the BIA abused its discretion when it denied a motion to reopen from a qualified beneficiary of a visa petition? Another holding is the service policy permits a prima facie qualified beneficiary of a visa petition to remain in the U.S. pending the final adjudication of the petition. And does it hold that the BIA abused its discretion when it denied that motion? In the matter of Garcia, Your Honor? Yes. Yes, I believe that is correct. But as the BIA case was, yes. And as the judge has indicated, the Dillman case superseded the matter of Garcia. And in that case, it was a motion to reopen that was filed, and the board denied it. And the court upheld the board's denial of that motion to reopen that was denied by the board. Well, but Dillman dealt with a marriage situation, did it not? Yes, Your Honor. All right. And Dillman cites the matter of Arthur, does it not? Yes, Your Honor. And what does Arthur hold? Matter of Arthur actually supersedes matter of Garcia. And I have matter of Arthur. But in any event, I have to look up matter of Garcia, I mean, matter of Arthur, Your Honor. But in any event, that's the board's precedent. And the court's case law has, supports the government's position that the board properly exercised its discretion in denying the motion to reopen because it was time and numerically barred. There was no visa. Arthur altered the Garcia policy of automatically reopening cases presented by qualified beneficiaries, and it did so only with respect to Right. And this is not a petition based on marriage. Right. And I'm not saying that Arthur is applicable in this case, Your Honor. Rather, I'm looking to this court's case law that would support the government's brief in which we argued that one, the petitioner had he made the board aware of the pending visa petition. What would have been the result at that time? At that time, Your Honor, still would have to show. Just tell me what the result would have been at that time. At that time, yes, he would not have been eligible for his motion to reopen would be denied because he wasn't prima facie eligible for adjustment of status because no visa was immediately available to him because the priority date was not current in Section 1255 requires. And what was what would what was the board's policy at that time? Well, petitioner represents in his brief that the board's policy at that time somehow would have allowed this case to stay in abeyance pending the determination of that priority date. However, that's I don't see case law support for that. And we respectfully disagree. The case law instead states that and the statute that the visa has to be immediately available. And that's what Garcia said. Garcia said we hold it. If upon approval, it will be immediately available. And it was dealing with a spouse petition, by the way, Garcia was. But it says we'll hold it if there's a prima facie case for it. And if upon approval, the visa will be immediately available. That's what it says, right? But you're on. And so if it's not immediately available, Garcia doesn't cover his situation. And his wasn't immediately available. Is that right? That's correct, Your Honor. My time has expired. Sure. First, Your Honor, I will respond to your question about why this court has jurisdiction. This court has held in Alcarez v. INS 384 F. 450 that a motion to reopen is a discretionary remedy and a failure to exhaust that discretionary remedy cannot preclude this court's jurisdiction. And this court has similarly held in Iturribarria v. INS 381 F. 3089 that a motion to reopen is a discretionary remedy, a discretionary right, not a mandatory one. Therefore, I think that's why this court does have jurisdiction, even though this issue hasn't been raised before to the IA previously. I do want to respond very briefly on the matter of Garcia. The issue with Garcia, it's not just that the visa be approved. It is if the visa, when it's approved, is immediately available. And in the case of Mr. Torres Ophelia, once his visa was approved, it was immediately available. He was able to claim it immediately upon its approval in 2003, so it would have been the same back in the mid-1990s. What language would you direct this to in Garcia? Garcia talks about how in there they're talking about when a visa petition and the application for decimation status are filed simultaneously, so the visa clearly hasn't been approved yet, that it is still proper to keep the motion to reopen pending until the adjudication of the visa petition. So in that situation, even though the visa wasn't readily available at the time of the filing, it said because if it's granted, it will become immediately available, that's sufficient grounds to hold the motion to reopen pending so that the person can stay in the country and maintain their justice status at the time of the visa being granted. And with respect to the Dielman decision, that was a narrow holding limited strictly to marriage-based visa petitions where the marriage was entered into after the commencement of deportation proceedings. Mr. Torres Ophelia's petition is based on his brother. It is not a marriage-based petition, so Dielman doesn't apply to Mr. Torres' situation, as he obviously did not enter into a marriage after his proceedings began as an attempt to stay in the country. And Dielman specifically talks about dealing with that situation, because in that case, Mr. Dielman did in fact get married after his deportation proceedings had begun. And so that is why the Dielman ruling, which adopted Arthur, came out the way it did, but does not apply to Mr. Torres' case. I thank you, Your Honors. Do you have any further questions? Thank you. Laterals, please submit. Thank you. All right.
judges: Pregerson, Nelson, Fernandez